**THERESA SCOTT, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                   **NO. 19-1808-WBV-JVM**

**QUALITY FAB & MECHANICAL, LLC, ET AL.**    **SECTION: D (1)**

## ORDER AND REASONS

Before the Court is a Motion for Default Judgment, filed by plaintiffs, Theresa Scott and Francheska Rebardi, on May 3, 2019.[1]  As of the date of this Order, the Motion is unopposed.

Also before the Court is a Motion for Relief From Entry of Default ("the "Motion For Relief"), filed by defendants, Quality Fab and Mechanical, LLC, Quality Fab and Mechanical Contractors, Inc., St. Rose Driving Range, LLC, and Bruce M. Bourgeois, on July 17, 2019.[2]  The Motion for Relief is opposed,[3] and Defendants have filed a Reply.[4]

After careful consideration of the parties' memoranda and the applicable law, Defendants' Motion For Relief From Entry of Default is **DENIED** and Plaintiffs' Motion for Default Judgment is **GRANTED.**

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On February 27, 2019, Theresa Scott and Francheska Rebardi (collectively, "Plaintiffs"), filed a Complaint in this Court against Quality Fab and Mechanical,

---

[1] R. Doc. 14.
[2] R. Doc. 24.
[3] R. Doc. 33.
[4] R. Doc. 36.

LLC, Quality Fab and Mechanical Contractors, Inc., St. Rose Driving Range, LLC, and Bruce M. Bourgeois (collectively, "Defendants"), asserting Title VII claims of employment discrimination based upon sexual harassment and hostile work environment.[5] Plaintiffs allege that Scott began working for Quality Fab & Mechanical, LLC ("Quality Fab"), on January 5, 2017, in accounts payable, and was promoted within a few weeks to payroll clerk.[6] Plaintiffs also assert that Rebardi began working at Quality Fab in March 2017 as an accounts receivable clerk.[7] Plaintiffs allege that on March 29, 2017, Bourgeois, who is their supervisor and one of the owners of Quality Fab, invited them to have a drink at the St. Rose Driving Range, a driving range and bar owned by Bourgeois, to show his appreciation for their hard work after a difficult day and to discuss a recent issue with an unpaid invoice.[8] Plaintiffs allege that they were both drugged and raped by Bourgeois at the driving range that night.[9] Plaintiffs allege that, upon their return to work, co-workers began making comments to them about how both Plaintiffs had gotten drunk that prior Wednesday evening, and other comments regarding Bourgeois that made the Plaintiff's feel fear, anxiety, uneasiness and panic.[10] Bourgeois' wife, who also works at the company and was Plaintiffs' supervisor, told Plaintiffs that Bourgeois "always gets what he wants."[11]

---

[5] R. Doc. 1.
[6] *Id.* at ¶ 4.
[7] *Id.*
[8] *Id.* at ¶ 6.
[9] *Id.* at ¶¶ 7-23.
[10] *Id.* at ¶¶ 15-16.
[11] *Id.* at ¶ 19.

Plaintiffs allege that they both underwent rape kit evaluations at University Medical Center in New Orleans, and that the hospital reported the matter to the Louisiana State Police ("LSP").[12] Plaintiffs assert that the LSP opened a criminal investigation into the matter, obtained video footage from the driving range on the night in question, and that there is an ongoing investigation.[13] On the following Monday, plaintiff Scott met with Bourgeois' wife to discuss her frustration over the things Bourgeois and her co-workers were saying to her and to plaintiff Rebardi. Plaintiff Scott asked Mrs. Bourgeois to please stop her co-workers and Bourgeois from making inappropriate comments. Plaintiffs allege Mrs. Bourgeois refused and said that Plaintiffs "had brought this upon themselves.[14] Plaintiffs allege that they did not return to work "knowing that the taunts would not stop and that no-one in management would do anything to stop it."[15]

Plaintiffs assert that Scott filed a Complaint of Discrimination with the EEOC on September 20, 2017, and was issued a right to sue letter on December 10, 2018.[16] Plaintiffs also assert that Rebardi filed a Complaint of Discrimination on January 25, 2018, but had not received a right to sue letter from the EEOC before the Complaint was filed.[17] Plaintiffs, however, supplemented the record with Rebardi's Notice of Right to Sue Letter, which is dated March 12, 2019.[18]

---

[12] *Id.* at ¶¶ 22 & 23.
[13] *Id.* at ¶ 22.
[14] *Id.* at ¶ 24.
[15] *Id.*
[16] *Id.* at ¶ 26.
[17] *Id.* at ¶ 27.
[18] R. Doc. 39.

The record reflects that the Defendants were served with a copy of the Complaint on March 17, 2019, and that responsive pleadings were due by April 8, 2019.[19] Defendants, however, failed to file responsive pleadings by that date. On April 23, 2019, with no responsive pleadings having been filed, the Court issued a Show Cause Order, requiring the Plaintiffs to show good cause in writing within 21 days why the Defendants should not be dismissed for failure to prosecute.[20] Pursuant to that Order, Plaintiffs filed a Motion for Entry of Default as to all of the Defendants on May 1, 2019, for their failure to plead under Fed. R. Civ. P. 55(a).[21] The Clerk granted the Motion and issued an Entry of Default on May 2, 2019.[22] On May 3, 2019, Plaintiffs filed the instant Motion for Default Judgment, asking the Clerk to enter a default judgment as to all Defendants and to set a hearing to determine the amount of the judgment.[23]

Thereafter, on June 17, 2019, Defendants filed a Motion to Enroll counsel of record.[24] That Motion was granted on June 19, 2019,[25] yet defense counsel failed to take any action or file any pleadings. As a result, the Court issued an Order on July 15, 2019, setting a status conference with the Court for July 18, 2019.[26]

On July 17, 2019, in response to the Court's July 15th Order, Defendants filed the instant Motion For Relief From Entry of Default, asserting that the entry of

---

[19] R. Docs. 6, 7, 8 & 9.
[20] R. Doc. 10.
[21] R. Doc. 12.
[22] R. Doc. 13.
[23] R. Doc. 14.
[24] R. Doc. 21.
[25] R. Doc. 22.
[26] R. Doc. 23.

default is void and should be set aside because Defendants were never served with a copy of the Complaint in accordance with Fed. R. Civ. P. 4.[27]  Defendants allege that, "[N]either Bruce Bourgeois nor Lorna Bourgeois have any recollection of being served and were not at the location of claimed service together but for a very brief period of time and neither Bruce nor Lorna had any actual knowledge that such lawsuit had been filed against him."[28]  Defendants further assert that defense counsel spoke with a representative of the Louisiana State Police ("LSP"), who advised that the criminal investigation into the underlying allegations of sexual assault was closed over a year ago.[29]  Defendants do not submit any evidence to support this claim, but assert, in a footnote, that they "will supplement the record with an affidavit or other form of admissible proof from the Louisiana State Police as soon as possible."[30]  Defendants also assert in the July 17, 2019 pleading that they are "awaiting production of the closed investigatory file from the Louisiana State Police and will supplement the Court upon receipt." [31]   As of the date of this Order, Defendants have not supplemented the record with any evidence from the LSP.  Nonetheless, Defendants dispute the allegations in the Complaint.

Turning to the issue of service, Defendants assert that although service was purportedly made by David Centanni, a private process server, on March 17, 2019 by personal service at the domicile of Bruce and Lorna Bourgeois, the Bourgeois' have

---

[27] R. Doc. 24 at p. 1.
[28] *Id*. at pp. 1-2.
[29] R. Doc. 24-1 at p. 2.
[30] *Id*. at n. 1.
[31] *Id*. at p. 3.

no recollection of being served on that date.[32]  In support of that position, Defendants submitted an "Affidavit of Bruce and Lorna Bourgeois," in which they both claim that, "I have never been personally served, nor have I received domiciliary service of any notice, citation, process, or pleading regarding the above captioned matter, or for any related or associated hearing or cause of action herein."[33]  Defendants claim that they sought security camera footage from the home of Bruce and Lorna Bourgeois, but it had already been written over by the time they retained counsel.[34]  Defendants seek relief from the entry of default under Fed. R. Civ. P. 60(b), asserting that the judgment is void and should be set aside because Defendants have sworn to the Court and to their attorneys that they did not receive proper service.[35]

Alternatively, should the Court find that service was proper, Defendants assert that good cause exists to set aside the entry of default under Fed. R. Civ. P. 60(b)(6).[36]  Specifically, Defendants argue that all three criteria considered by Courts in determining whether sufficient grounds exist for setting aside a default judgment are met in this case because: (1) the default was not willful on their part; (2) Plaintiffs will not be prejudiced if the entry of default is set aside; and (3) Defendants can present a meritorious defense to the allegations in the Complaint.[37]

Defendants claim the default was not willful because they were never served with a copy of the Complaint, so they were not aware of the legal proceedings against

---

[32] *Id*. at pp. 3, 6-7.
[33] R. Doc. 24-2.
[34] R. Doc. 24-1 at p. 3.
[35] *Id*. at pp. 5-7.
[36] *Id*. at pp. 7-10.
[37] *Id*. (citing *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000)).

them and had no knowledge of the matter.[38] Defendants argue that default judgments are generally disfavored, and that setting aside the entry of default would not prejudice Plaintiffs because they never confirmed a judgment pursuant to the default.[39] Finally, Defendants claim they can present a complete defense to the allegations in the Complaint based upon information contained in the closed investigatory file of the LSP regarding the underlying incident.[40] Defendants assert that the allegations in the Complaint are "incendiary and wrought with selective facts, and outright falsehoods in many areas."[41] Defendants also point out that the Fifth Circuit has noted that motions to set aside entries of default are more commonly granted than motions to set aside default judgments.[42]

Plaintiffs oppose the Defendants' Motion, asserting that the Defendants were properly served through their agents for service of process, Bruce and Lorna Bourgeois, as evidenced by a Declaration of their private process server, as well as a photograph taken at the time of service.[43] Plaintiffs point out that in their subsequent Affidavits, submitted with Defendants' Opposition to Set Aside Default,[44] Bruce and Lorna Bourgeois do not dispute that the photograph correctly depicts them being served. Defendants concede that, despite their earlier Affidavit declaring "I have never been personally served, nor have I received domiciliary service of any notice, citation, process, or pleading regarding the above captioned matter," they are

---

[38] R. Doc. 24-1 at p. 7.
[39] *Id*. at p. 8.
[40] *Id*. at pp. 8-9.
[41] *Id*. at p. 9.
[42] *Id*. at p. 10 (citing *In re OCA*, 551 F.3d 359, 370 (5th Cir. 2008)).
[43] R. Doc. 33 at p. 1 (*citing* R. Doc. 33-1).
[44] R. Doc. 33.

now aware that there is "evidence to the contrary" that service was made through Mr. and Mrs. Bourgeois on March 17, 2019.[45]  Plaintiffs argue there is no excuse for why Bruce and Lorna Bourgeois chose to ignore service when, as agents for the defendant-companies, they presumably have been served many times.   Plaintiffs assert that Bruce and Lorna Bourgeois are not novices when it comes to being served because Defendants have been sued in at least seven other cases filed in this Court and in eleven cases filed in St. Charles Parish, and Bruce and Lorna Bourgeois would have been served as agents for service of process  in those cases.[46]  Plaintiffs point out that Bruce Bourgeois has been the agent for service of process for his companies for almost 30 years, while Lorna Bourgeois has been the agent for service of process for the St Charles Driving Range since 2004.[47]  Plaintiffs assert that not only have Bruce and Lorna Bourgeois ignored service of process in this case, they have also ignored seven notices that were mailed to them at their home and office between the entry of default on May 2, 2019, and their enrollment of counsel on June 19, 2019.[48]

Plaintiffs further argue that Defendants have failed to put forth a viable excuse for their failure to respond, asserting only that they do not recall getting served, despite the fact that a picture taken by the process server clearly shows them reviewing the citation and pleading on March 17, 2019.[49]  Plaintiffs assert that Defendants knew what this suit was about because they had previously received two

---

[45] *Id.* at p. 1 (*citing* R. Doc. 33-2); R. Doc. 36.
[46] R. Doc. 33 at pp. 1-3.
[47] *Id.* at p. 5 (*citing* R. Docs. 33-4, 33-5 & 33-6).
[48] R. Doc. 33 at p. 3 (*citing* R. Docs. 13, 14, 15, 16, 17, 18 & 19).
[49] R. Doc. 33 at p. 4.

notices of claims from the EEOC regarding the Plaintiffs. Plaintiffs argue that, under Fifth Circuit precedent, an intentional failure to answer is sufficient for a court to deny a motion to set aside a default.[50] Plaintiffs argue that the Court should also deny the Defendants' Motion because they did not act expeditiously to correct the default.[51] Plaintiffs claim that Bruce Bourgeois spoke to the Magistrate Judge's law clerk on May 17, 2019, after missing a telephone conference scheduled for that day, and subsequently participated in the rescheduled conference on May 30, 2019, but that Defendants still took no action to address the default until filing the instant Motion on July 17, 2019, the day before a status conference noticed by the Court.

Plaintiffs also argue that Defendants have failed to put forth a viable defense to their employment discrimination claims for sexual harassment and hostile work environment.[52] Although Defendants claim that Plaintiffs cannot prove they were drugged and sexually assaulted, Plaintiffs argue that defense has no bearing on their employment discrimination claims, which do not require proof that they were actually drugged and sexually assaulted. Finally, Plaintiffs argue the default judgment will not result in an unreasonable damage award because Title VII claims are limited to lost wages, emotional distress/punitive damages, and attorney's fees.[53] As such, Plaintiffs assert that the Court should not be concerned that it will be called upon to award any extraordinary amounts if the default is not set aside.

---

[50] *Id*. (citing *Matter of Dierschke*, 975 F.2d 181, 184-85 (5th Cir. 1992)).
[51] R. Doc. 33 at p. 4 (citing *In re Chinese Manufactured Drywall Products Liability Litigation*, 742 F.3d 576, 594 (5th Cir. 2014)).
[52] R. Doc. 33 at pp. 5-6.
[53] *Id*. at p. 9.

In response, Defendants assert that the entry of default should be set aside for good cause so that Defendants are afforded an opportunity to defend themselves from the serious charges alleged in the Complaint.[54]  Defendants maintain that their failure to file responsive pleadings was not willful because, as stated in their updated Affidavits, Bruce and Lorna Bourgeois "earnestly maintain that they have no recollection of being served, and that they represented the same to their counsel."[55] Defendants assert that Plaintiffs have not argued that they will be prejudiced if the entry of default is set aside, and Defendants maintain that they have shown that Plaintiffs' allegations of sexual assault and drugging have been found to be unsubstantiated by the LSP.[56]  Defendants further argue that while Plaintiffs have argued why the default judgment should not be set aside, they have failed to argue why the entry of default should not be set aside under Fed. R. Civ. P. 60(b)(6).[57] Finally, Defendants argue that the entry of default will cause irreparable harm if it is not set aside, as Defendants "seek to vigorously defend any such incendiary claims with the assistance of counsel and the full due process of the law."[58]

---

[54] R. Doc. 36.
[55] *Id*. at p. 2 (*citing* R. Docs. 36-1 & 36-2).
[56] R. Doc. 36 at p. 3.
[57] *Id*. at p. 4.
[58] *Id*.

## II. LAW AND ANALYSIS

### A. Defendants' Motion For Relief From Entry of Default.

#### 1. *Legal standard for setting aside an entry of default.*

According to the Fifth Circuit, Fed. R. Civ. P. 55(c) and 60(b) allow a district court to set aside an entry of default or default judgment for "good cause."[59] Although default judgments are "generally disfavored in the law,"[60] that policy is "counterbalanced by considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion."[61] To determine whether good cause exists to set aside a default, courts consider the following three factors: (1) whether the default was willful; (2) whether setting aside the default judgment would prejudice plaintiffs; and (3) whether a meritorious defense is presented.[62] Courts can also consider other factors, including whether the defendant acted expeditiously to correct the default.[63] "A finding of willful default ends the inquiry, for when the court finds an intentional failure of responsive pleadings there need be no other finding."[64] Further, when a defendant's neglect is at least a partial cause of its failure to respond, the defendant has the burden to convince the court that its neglect was excusable, rather than willful, by a preponderance of the evidence.[65]

---

[59] *Lacy v. Sitel Corp.*, 227 F.3d 290, 291-92 (5th Cir. 2000).

[60] *Id.* at 292 (quotation omitted).

[61] *In re Chinese Manufactured Drywall Products Liability Litigation*, 742 F.3d 576, 594 (5th Cir. 2014) (quoting *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999)) (quotation marks omitted).

[62] *Lacy*, 227 F.3d at 292 (quotation and quotation marks omitted).

[63] *In re Chinese Drywall*, 742 F.2d at 594 (citing *Lacy*, 227 F.3d at 292).

[64] *In re Chinese Drywall*, 742 F.2d at 594 (quoting *Lacy*, 227 F.3d at 292) (quotation marks omitted).

[65] *In re Chinese Drywall*, 742 F.2d at 594 (citations omitted).

### 2. *Defendants have not shown that good cause exists to set aside the entry of default.*

#### a. **Defendants' failure to file responsive pleadings was willful.**

After reviewing the evidence presented by both parties, the Court finds that Defendants have failed to show that good cause exists to set aside the entry of default in this case. Turning to the three-factor analysis set forth by the Fifth Circuit in *Lacy v. Sitel Corp.*,[66] the Court finds that Defendants' failure to file responsive pleadings in this case was willfull. When Defendants filed the instant Motion For Relief, they submitted a joint "Affidavit of Bruce and Lorna Bourgeois," in which they each state that, "I have never been personally served, nor have I received domiciliary service of any notice, citation, process, or pleading regarding the above captioned matter, or for any related or associated hearing or cause of action herein."[67] In response, Plaintiffs submitted a Declaration from David Centanni, a private process server retained by Plaintiffs, stating that he personally served citations and certified copies of the Complaint upon Bruce and Lorna Bourgeois on March 17, 2019, at their home in Destrehan, Louisiana.[68] The Declaration also states that the photograph attached thereto was taken by Centanni of Bruce and Lorna Bourgeois at the time he personally served them on March 17, 2019 at their home, which photograph depicts them reviewing the documentation that he personally served upon them.[69] The photograph attached to Centanni's Declaration includes a picture of the home and of

---

[66] 227 F.3d at 291-92.
[67] R. Doc. 24-2.
[68] R. Doc. 33- 1 at p. 1.
[69] *Id.*

Bruce and Lorna Bourgeois reviewing documents.[70]  Defendants now concede that there is photographic evidence showing service.  When confronted with the same photograph during the Court's July 18, 2019 status conference, defense counsel did not dispute the authenticity of the photographs.  In their Reply brief, which was filed after the July 18, 2019 status conference, Defendants do not address the photograph.  Instead, Defendants submitted new Affidavits from Bruce and Lorna Bourgeois, in which they each state that they "earnestly maintain that they have no recollection of being served."[71]

While Bruce and Lorna Bourgeois may "earnestly believe" that they were not personally served with the Complaint, the photograph submitted by Plaintiffs clearly contradicts that purported belief.  The Court finds that the photograph constitutes clear evidence that Defendants were served with a copy of the Complaint through Bruce and Lorna Bourgeois, their agents for service of process, on March 17, 2019.  Defendants have neither argued or put forth any evidence to dispute the veracity or authenticity of the photograph taken by the process server, or to dispute that the photograph constitutes clear evidence that service was perfected on March 17, 2019.  Incredibly, Defendants assert that, "Plaintiffs offer nothing in support of this conclusion [that Defendants' failure to respond was willful] other than listing cases in which the Defendants have also been sued."[72]  Apparently, in addition to ignoring service of process in this case, Defendants have chosen to ignore the photographic

---

[70] R. Doc. 33-1 at p. 2.
[71] R. Doc. 36 at p. 2 (*citing* R. Docs. 36-1 & 36-2).
[72] R. Doc. 36 at p. 2.

evidence that clearly shows that they were, in fact, served with a copy of the Complaint. While Defendants claim that they "clearly lacked the sophistication to understand the difference between the past dealings of the EEOC and a new complaint before this Honorable Court," Defendants readily admit that they "are no novices to being served."[73] Additionally, when the Court asked defense counsel during the July 18, 2019 status conference how the Defendants discovered that this suit was pending and retained counsel if they were never served with a copy of the Complaint, defense counsel stated that the Defendants learned about the suit because they received subsequent pleadings in the mail. Thus, Defendants' failure to file responsive pleadings was not due to excusable neglect.

Because Plaintiffs have submitted photographic evidence showing that Defendants were served with the Complaint on March 17, 2019, the Court finds that Defendants' failure to file responsive pleadings in this case was intentional. The Fifth Circuit has held that, "A finding of willful default ends the inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no other finding.'"[74] In light of the undisputed evidence showing that Defendants were served with a copy of the Complaint through their agents for service of process on March 17, 2019, the Court finds that Defendants' willful failure to file responsive pleadings is sufficient cause to deny Defendants' Motion For Relief From Entry of Default.

---

[73] *Id.*

[74] *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (quoting *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992)).

Nonetheless, the Court will consider the remaining two factors set forth in *Lacy* for determining whether good cause exists to set aside the entry of default.

> **b. While Plaintiffs have not alleged that they will be prejudiced by the setting aside of the entry of default, Defendants have not put forth a meritorious defense to the Plaintiffs' Title VII claims for sexual harassment and hostile work environment.**

Although Defendants' willful failure to file responsive pleadings provides a sufficient basis for denying Defendants' Motion for Relief, the Court further finds that an analysis of the two remaining *Lacy* factors further supports the Court's decision to deny Defendants' Motion. Regarding the second factor, whether setting aside the entry of default will prejudice the Plaintiffs, the Court agrees with Defendants that Plaintiffs have not argued that they will be prejudiced if the entry of default is not set aside. However, the Fifth Circuit has held that, "Even in the absence of willful neglect by the defendant or unfair prejudice to the plaintiff, a district court may have the discretion not to upset a default judgment if the defendant fails to present a meritorious defense sufficient to support a finding on the merits for the defaulting party."[75] Here, Defendants have not put forth a meritorious defense to the claims alleged in the Complaint.

In the Complaint, Plaintiffs assert claims under Title VII of the Civil Rights Act of 1964 for sexual harassment and hostile work environment.[76] When, as here, a Title VII claim of harassment is filed against a supervisor, an employee must show: (1) that the employee belongs to a protected class; (2) that the employee was subject

---

[75] *Lacy*, 227 F.3d at 293.
[76] R. Doc. 1 at ¶ 28.

to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition, or privilege of employment.[77] The only affirmative defense available to employers in a supervisor sexual harassment case in which an employee alleges a hostile work environment is the one announced by the Supreme Court in *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).[78] Under the *Ellerth/Faragher* affirmative defense, an employer can avoid vicarious liability upon proof that: (1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.[79] An employer must establish both prongs of the affirmative defense to be protected from vicarious liability for the supervisor's harassment.[80]

In the instant case, Defendants have not alleged, much less shown, that they have a meritorious defense to Plaintiffs' Title VII claims. Instead, Defendants claim that they have a complete defense to Plaintiffs' claims because the Plaintiffs' underlying allegations of sexual assault and drugging have been found to be

---

[77] *Lauderdale v. Texas Dept. of Criminal Justice, Institutional Div.*, 512 F.3d 157, 162-63 (5th Cir. 2007) (quoting *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999)) (quotation marks omitted).

[78] *Garcia v. Algiers Charter Schools Association, Inc.*, Civ. A. No. 17-8126, 2018 WL 4932052, at *6 (E.D. La. Oct. 11, 2018); *See Casiano v. AT&T Corp.*, 213 F.3d 278, 284 (5th Cir. 2000) ("As noted, this is the employer's only affirmative defense in a supervisor sexual harassment case post *Ellerth/Faragher*, and it is available only in a hostile environment (*no* tangible employment action) situation; never in a quid pro quo (tangible employment action) case.") (emphasis in original).

[79] *Garcia*, Civ. A. No. 17-8126, 2018 WL 4932052, at * 6 (quoting *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275) (quotation marks omitted).

[80] *Casiano*, 213 F.3d at 284.

unsubstantiated by the LSP after a detailed and in-depth investigation.[81] As Plaintiffs point out, however, their claims for sexual harassment and hostile work environment do not require proof that they were actually drugged and sexually assaulted.[82] Rather, Plaintiffs' claims are based upon how they were treated after the alleged sexual assault as detailed in the Complaint. Accordingly, Defendants have not put forth a meritorious defense sufficient to support a finding on the merits in their favor.[83]

Based on the foregoing, the Court finds that Defendants have not shown that good cause exists to set aside the entry of default under the three-factor test set forth by the Fifth Circuit in *Lacy v. Sitel Corp.*[84] Although Plaintiffs have not alleged that they will be prejudiced if the entry of default is set aside, the evidence shows that Defendants' failure to file responsive pleadings was willful and Defendants have not put forth a meritorious defense to the Plaintiffs' claims. The Court, therefore, finds that a majority of the factors weigh against finding good cause exists to set aside the entry of default in this case.

### c. Defendants also did not act expeditiously to correct the default.

In *Lacy v. Sitel Corp.*, the Fifth Circuit held that other factors may also be considered in determining whether good cause exists to set aside a default, including whether the defendant acted expeditiously to correct the default.[85] The Court finds

---

[81] R. Doc. 24-1 at pp. 8-9; R. Doc. 36 at p. 3.
[82] R. Doc. 33 at pp. 5-8.
[83] *See Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000).
[84] *Id.* at 292.
[85] *Id.* (quoting *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992)) (quotation marks omitted).

that a review of the record in this case demonstrates that Defendants did not act expeditiously to correct the entry of default. Defendants assert that their counsel has acted diligently to correct the entry of default because, "The undersigned enrolled on June 17, 2019 and immediately began a thorough investigation of the service issues that abound."[86] Defendants further assert that:

> Counsel has diligently investigated the matter, stemming from allegations centered in an alleged incident in 2017, has requested countless hours of security camera footage, has located and interviewed the investigating trooper from LSP, has requested the investigatory file from 2017/2018 and has timely prepared this motion for the Court in a swift and comprehensive manner.[87]

Defendants, however, fail to address why nearly a month elapsed between the enrollment of counsel on June 19, 2019, and the filing of the instant Motion For Relief From Entry of Default, or any motion whatsoever, with this Court. The Court further notes that this Motion was filed only after the Court issued an Order setting a status conference.

It was defense counsels' failure to take any action in this case for nearly 30 days after their enrollment that caused the Court to issue the July 15, 2019 Order setting a status conference for July 18, 2019.[88] As Plaintiffs point out, it was only *after* the Court's July 15, 2019 Order that Defendants filed the instant Motion For Relief, which was filed one day before the July 18, 2019 status conference.[89] When the Court questioned defense counsel during the July 18, 2019 status conference

---

[86] R. Doc. 24-1 at p. 3.
[87] *Id*. at p. 9.
[88] R. Doc. 23.
[89] R. Doc. 33 at p. 5 (*citing* R. Doc. 24).

about the delay between their enrollment and the filing of the instant Motion For Relief, counsel stated that they were waiting to file the Motion until they received evidence from the LSP, including its investigatory file on the underlying alleged sexual assault. It is unclear to the Court, however, whether Defendants ever obtained any such evidence from the LSP. A review of the record shows that Defendants still have not supplemented the record with information or evidence obtained from the LSP, despite Defendants' assertion in their Motion For Relief that they "will supplement the record with an affidavit or other form of admissible proof from the Louisiana State Police as soon as possible," to show that there is no ongoing criminal investigation. [90] Additionally, Defendants assert in their Reply brief that, "[U]ndersigned counsel has received notice for [sic] counsel from the Louisiana State Police that they would require a Subpoena Duces Tecum in order to release any records in the closed criminal investigation of this matter."[91] Defendants, however, offer no further information regarding whether the LSP records have been requested or obtained.

Based on the foregoing, the Court finds that Defendants have not acted expeditiously to correct the default. This finding further supports the Court's conclusion that Defendants have failed to show good cause exists to set aside the entry of default in this case. Because Defendants have failed to show that good cause

---

[90] R. Doc. 24-1 at p. 2, n.1. Although Defendants filed a Motion for Leave to File Supplemental Memorandum and Exhibits on July 22, 2019 (R. Doc. 30), which the Court denied on July 24, 2019 (R. Doc. 31), the entirety of the proposed First Supplemental Memorandum (R. Doc. 30-2) was included in Defendants' Reply brief (R. Doc. 36), and does not reference any evidence obtained from the LSP.
[91] R. Doc. 36 at p. 2.

exists to set aside the entry of default in this case, Defendants' Motion For Relief From Entry of Default must be denied.

## B. Plaintiffs' Motion For Default Judgment

### 1. Legal standard for entering a default judgment.

As explained by the Fifth Circuit, Fed. R. Civ. P. 55 establishes three steps for obtaining a default judgment: (1) default; (2) entry of default; and (3) default judgment.[92]  A default occurs when "a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules."[93]  Rule 55 provides that the Clerk of Court must enter a party's default, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise . . . ."[94]  Once the Clerk of Court has found a defendant to be in default, the Court may, upon motion by the plaintiff, enter a default judgment against the defendant.[95]  Before granting a motion for default judgment, however, this Court "has the duty to assure that it has the power to enter a valid judgment," and must "look into its jurisdiction both over the subject matter and the parties."[96]  The Fifth Circuit has held that, "A judgment entered without personal jurisdiction is void."[97]

Default judgments are "generally disfavored in the law" in favor of a trial upon the merits.[98]  The Fifth Circuit has emphasized that, "Default judgments are a drastic

---

[92] *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).
[93] *Id.*
[94] Fed. R. Civ. P. 55(a).
[95] Fed. R. Civ. P. 55(b)(2).
[96] *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).
[97] *Id.*
[98] *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (quotation omitted).

remedy, not favored by the Federal Rules, and resorted to by courts only in extreme situations."[99] For that reason, default judgments are "available only when the adversary process has been halted because of an essentially unresponsive party."[100] "This policy, however, is counterbalanced by considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion."[101] Further, a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.[102] When the Court has subject matter jurisdiction and personal jurisdiction over the parties, the Court may only issue a default judgment when circumstances support doing so.[103]

In determining whether the entry of a default judgment is appropriate under the circumstances, the Court must consider the following six factors: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.[104] Upon the clerk's entry of default, the movant's well-pleaded factual allegations are deemed admitted.[105] The Court, however, retains the

---

[99] *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citations omitted).

[100] *Id.* (quotation and quotation marks omitted).

[101] *In re Chinese Manufactured Drywall Products Liability Litigation*, 742 F.3d 576, 594 (5th Cir. 2014) (quoting *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999)) (quotation marks omitted).

[102] *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (quotation marks omitted).

[103] *Hampton v. Praetorian Ins. Co.*, Civ. A. No. 18-3528, 2019 WL 118012, at *3 (E.D. La. Jan. 7, 2019).

[104] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[105] *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

obligation to determine whether those facts state a claim upon which relief may be granted.[106]  The entry of a default judgment is committed to the sound discretion of the district judge, and is afforded great deference upon review.[107]

### 2. Default judgment is appropriate in this case.

As a preliminary matter, although Plaintiffs have not provided any briefing on the issue of jurisdiction, it appears that the Court has subject matter jurisdiction over the claims in the Complaint under 28 U.S.C. § 1331 because Plaintiffs assert claims under Title VII of the Civil Rights Act of 1964 for sexual harassment and hostile work environment.[108]  It also appears that the Court has personal jurisdiction over the parties because Bruce Bourgeois is a Louisiana domiciliary and the three entity-defendants are Louisiana entities that are doing business within this District.[109]  As previously discussed, service of process on Bruce and Lorna Bourgeois, as the agents for service of process for the Defendants, was proper because they were personally served with a copy of the Complaint at their domicile on March 17, 2019.

The Court further finds that an analysis of the six factors set forth by the Fifth Circuit in *Lindsey v. Prive Corp.*[110] weighs in favor of entering a default judgment in this case.  Regarding the first factor, whether material issues of fact are at issue, the Court finds that there are no material facts in dispute because Defendants failed to

---

[106] *J&J Sports Productions, Inc. v. Tiger Paw Daiquiris & Grill, LLC*, Civ. A. No. 14-268-BAJ-RLB, 2015 WL 1800619, at *2 (M.D. La. Apr. 16, 2015) (citations omitted).
[107] *Fagan v. Lawrence Nathan Associated, Inc.*, 957 F. Supp. 2d 784, 796 (E.D. La. 2013) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).
[108] R. Doc. 1 at ¶¶ 1 & 28.
[109] *Id*. at ¶ 3.
[110] 161 F.3d 886, 893 (5th Cir. 1998).

file responsive pleadings to the Complaint.[111]  The second factor, whether there has been substantial prejudice, also weighs slightly in favor of the Plaintiffs.  Defendants' decision to ignore service of the Complaint and their failure to file responsive pleadings or to seek relief from the entry of default for more than two months has prejudiced the Plaintiffs' interest in resolving their claims against Defendants.[112] The Court further finds that the third and fourth factors – whether the grounds for default are clearly established and whether the default was caused by good faith mistake or excusable neglect – weigh heavily in favor of Plaintiffs.  The Court has already determined that the default was not caused by good faith mistake or excusable neglect, and that Defendants' failure to file responsive pleadings in this case was willful.  Thus, these factors weigh in favor of entering a default judgment.

The Court - finds that the fifth factor, the harshness of a default judgment, weighs in favor of Defendants.  Plaintiffs have not submitted any information regarding the amount of damages they seek for lost wages, punitive damages, attorney's fees, costs and judicial interest, so the Court cannot determine whether an entry of default judgment would be overly harsh.  The Court notes, however, that a default judgment does not establish the amount of damages, and that the Court is not required to award damages for which there is no basis in fact or law.[113] Nonetheless, since the entry of default, Defendants have enrolled counsel who they

---

[111] *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

[112] *See United States v. Fincanon*, Civ. A. No. 08-61, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (holding that a plaintiff's interests were prejudiced because the defendant's failure to respond to the complaint halted the adversary process).

[113] *United States for Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

claim "stand ready to proceed to motion practice, discovery and defense of these allegations which they take very seriously."[114]  Thus, this factor weighs in favor of Defendants.

Finally, the Court finds that the sixth factor, whether the Court would think itself obligated to set aside the default judgment on the Defendants' motion, weighs in favor of the Plaintiffs.  As previously mentioned, the Motion For Default Judgment is unopposed.  Thus, the Court is unaware of any facts that would lead it to set aside the default judgment if challenged by the Defendants under Fed. R. Civ. P. 60(b).  Further,  the Court has already conducted a "good cause" analysis under Fed. R. Civ. P. 55(c) and has determined that good cause does not exist to set aside the entry of default in this case.  Defendants have not presented the Court with argument indicating that the Court would reach a different outcome with respect to a motion to set aside default judgment under Fed. R. Civ. P. 60(b)(6).

Based on the foregoing, the Court finds that a majority of the factors set forth by the Fifth Circuit in *Lindsey v. Prive Corp.*[115] weighs in favor of entering a default judgment in this case.  Specifically, there are no material issues of fact in this case, Plaintiffs have been prejudiced by the Defendants' default, the grounds for default are clearly established, the default was willful and not caused by good faith mistake or excusable neglect, a default judgment would be harsh to Defendants, and the Court would not be obliged to set aside the default judgment upon a motion by Defendants.

---

[114] R. Doc. 36 at p. 3.
[115] 161 F.3d 886, 893 (5th Cir. 1998).

### 3. Plaintiffs' allegations establish a sufficient basis for a default judgment.

In addition to determining whether default judgment is appropriate, the Court must decide whether Plaintiffs' allegations provide a sufficient basis for a default judgment against Defendants. As a preliminary matter, Defendants do not dispute Plaintiffs' assertion that they both exhausted their administrative remedies by timely filing a discrimination charge with the United States Equal Employment Opportunity Commission (the "EEOC"), or that Plaintiffs timely filed this suit within 90 days of receiving their Right to Sue letters.[116]

Title VII prohibits sexual harassment that takes the form of a tangible employment action, such as a demotion or denial of promotion, or the creation of a hostile or abusive working environment.[117] Here, there is no allegation of a tangible employment action. Instead, Plaintiffs allege that Bourgeois' behavior created a hostile or abusive working environment.

To establish a prima facie case of hostile work environment under Title VII, an employee must show: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action.[118] When the claim of harassment is

---

[116] *See* R. Doc. 1 at ¶¶ 26 & 27.
[117] *Lauderdale v. Texas Dept. of Criminal Justice, Institutional Div.*, 512 F.3d 157, 162 (5th Cir. 2007) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).
[118] *Shepherd v. Comptroller of Public Accounts of State of Texas,* 168 F.3d 871, 873 (5th Cir. 1999).

against a supervisor, the employee need only prove the first four elements to establish a hostile working environment claim.[119] The employer is vicariously liable for the harassment by a supervisor unless it can prove a two-step affirmative defense.[120] Under the *Faragher* affirmative defense, the employer must show that: (1) it exercised reasonable care to prevent and promptly correct harassing behavior; and (2) the plaintiff-employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer, or to otherwise avoid harm.[121]

Because a defaulting defendant is deemed to admit every well-pleaded allegation in the complaint, the Clerk's entry of default establishes a defendant's liability.[122] The Court finds that the allegations in Plaintiffs' pleadings establish that Plaintiffs belong to a protected class and that Bruce Bourgeois, their supervisor, made sexually explicit and offensive comments to Plaintiffs in front of other coworkers regarding his alleged rape of the Plaintiffs. Specifically, Bruce Bourgeois asked Scott, in front of Rebardi and other co-workers, "you don't remember the Vaseline on your ass?"[123] When Plaintiffs asked Lorna Bourgeois, who was also one

---

[119] *Lauderdale*, 512 F.3d at 162-63 (quoting *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999)) (quotation marks omitted).
[120] *Stallworth v. Imani Envtl. Group, Inc.*, 2013 WL 1896193, at *2 (M.D. Ala. May 6, 2013) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).
[121] *Faragher*, 524 U.S. at 807, 118 S.Ct. at 2293.
[122] *Robinson v. Ergo Sols., LLC*, 4 F. Supp. 3d 171, 178 (D.D.C. 2014) (quoting *AARP v. Sycle*, 991 F. Supp. 2d 234, 238 (D.D.C.2014)) (quotation marks omitted); *See J&J Sports Productions, Inc. v. Tiger Paw Daiquiris & Grill, LLC*, Civ. A. No. 14-268-BAJ-RLB, 2015 WL 1800619, at *5 (M.D. La. Apr. 16, 2015) (citing *Ins. Co. of the West v. H & G Contractors, Inc.*, Civ. A. No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011)) (same); *Nishimatsu Constr. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established").
[123] R. Doc. 1 at ¶ 17.

of their supervisors,[124] to stop their co-workers and to stop Bruce Bourgeois from making inappropriate comments to them, Lorna Bourgeois refused and told Plaintiffs that they "had brought this upon themselves."[125]

The Court further finds that Bruce Bourgeois' harassment created a hostile work environment for the Plaintiffs. The Fifth Circuit has held that, in determining whether an environment is hostile or abusive, the Court must look to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, whether it unreasonably interferes with an employee's work performance, and whether the complained of conduct undermined the plaintiff's workplace competence.[126] As the Fifth Circuit has explained, "the test – whether the harassment is severe or pervasive – is stated in the disjunctive. An egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment."[127] The Fifth Circuit further explained that the environment must be deemed both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.[128]

---

[124] *Id*. at ¶ 19.
[125] *Id*. at ¶ 24.
[126] *Lauderdale v. Texas Dept. of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (internal quotations and quotation marks omitted).
[127] *Lauderdale*, 512 F.3d at 163 (citing *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 434, 35 (5th Cir. 2005)).
[128] *Lauderdale*, 512 F.3d at 163 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)) (quotation marks omitted).

The Court finds that in light of the alleged rapes by Bruce Bourgeois, facts which are deemed admitted due to the entry of default, his conduct constitutes an egregious incident that created a hostile and/or abusive environment for Plaintiffs. Further, Defendants did not oppose the Motion for Default Judgment and, therefore, have not asserted an affirmative defense to the vicarious liability of the entity-defendants for the conduct of Bruce Bourgeois. Accordingly, Plaintiffs' allegations present a prima facie Title VII claim for sexual harassment against Bruce Bourgeois, as well as the entity-defendants who are vicariously liable for his actions.

In their Motion for Default Judgment, Plaintiffs seek a default judgment as to all Defendants, and requested a hearing to determine the amount of the judgment.[129] "When a party seeks a default judgment for damages, the Fifth Circuit instructs that damages should not [be] awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts." [130] Accordingly, the Court grants Plaintiffs' request and will set the matter for a hearing to determine the damages to be awarded.

## III.   CONCLUSION

Based on the foregoing, the Court finds that Defendants have failed to show that good cause exists to set aside the entry of default in this case. As explained above, although Plaintiffs have not alleged that they will be prejudiced if the entry of default is set aside, the evidence shows that the Defendants' failure to file responsive

---

[129] R. Doc. 14 at p. 1.
[130] *Hampton v. Praetorian Ins. Co.*, Civ. A. No. 18-3528, 2019 WL 118012, at *3 (E.D. La. Jan. 7, 2019) (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

pleadings was willful, Defendants have not submitted a meritorious defense to the Plaintiffs' Title VII claims, and Defendants did not act expeditiously to correct the default.[131]  The Court further finds that a default judgment is appropriate in this case because there are no material issues of fact in this case, Plaintiffs have been prejudiced by the Defendants' default, the grounds for default are clearly established, the default was willful and not caused by good faith mistake or excusable neglect, a default judgment would be harsh to Defendants, and the Court would not be obliged to set aside the default judgment upon a motion by Defendants.[132]  The Court also finds that Plaintiffs have presented a prima facie case for their Title VII claims for sexual harassment that created a hostile work environment.  As such, Plaintiffs are entitled to a default judgment in this case.  This matter shall be set for a hearing on the issue of the amount of damages owed by Defendants.

**IT IS HEREBY ORDERED** that the Defendants' Motion For Relief From Entry of Default[133] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion For Default Judgment[134] is **GRANTED.**

---

[131] *See Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000).
[132] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).
[133] R. Doc. 24.
[134] R. Doc. 14.

**IT IS FURTHER ORDERED** that a hearing is set for April 15, 2020, at 9:00

a.m., during which the Court will hear oral argument and live testimony regarding

the amount of judgment.

New Orleans, Louisiana, March 9, 2020.


_Wendy B Vitter_
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**